

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-25-00113-CR
_____

JOSE RODRIGUEZ, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 55010-A

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

# MEMORANDUM OPINION

A Gregg County jury convicted Jose Daniel Rodriguez, Jr., of capital murder of two individuals during the same criminal transaction. *See* TEX. PENAL CODE ANN. § 19.03(a)(7) (Supp.). Because the State did not seek the death penalty, the trial court imposed a mandatory life sentence without parole. *See* TEX. CODE CRIM. PROC. ANN. art. 37.071, § 1(a) (Supp.); TEX. PENAL CODE ANN. § 12.31.

Rodriguez claims his conviction should be reversed for four reasons: (1) the trial court abused its discretion in admitting certain video recordings of the shooting (presented to the jury as a single compilation video), (2) the trial court erred by submitting a jury charge containing conflicting application paragraphs, (3) the trial court erred by failing to submit a defense-of-a-third-person jury instruction, and (4) Texas law mandating an automatic sentence of life without parole upon conviction for capital murder is facially unconstitutional.

We conclude that the trial court did not err in admitting the video compilation or in submitting the jury charge and Rodriguez did not preserve error regarding his requested jury instruction or his claim of unconstitutionality. Even so, we modify the trial court's judgment (1) to reflect that the punishment was assessed by the trial court and (2) that punishment was a mandatory life sentence without parole. As modified, we affirm the trial court's judgment.

## I. Background

The murders for which Rodriguez was convicted took place in Clara Marie Liscano's backyard in Longview, Texas, just before 3:00 a.m. on June 10, 2023. The two men who were killed were Aleksei Gamez, Liscano's boyfriend, and Aleksei's brother, Alexander Gamez.

At trial, Liscano testified that Aleksei was her live-in boyfriend. Liscano stated that some hours before the shooting, someone had tried to enter her home without her permission. Liscano said that she woke Aleksei to tell him, and he became upset. Aleksei called Alexander and a friend, and the three of them gathered at Liscano's residence and then left together to go look for the man who tried to enter Liscano's home. Sometime later, Liscano learned that Aleksei, Alexander, and their friend were at a residence around the corner from her house, so she and her friend, Jennifer Hernandez, went to that location. Liscano, Aleksei, Alexander, and the men's friend returned to Liscano's house, but then the three men left again.

Liscano testified that shortly before 2:30 a.m., while still home alone, she grabbed a flashlight to go sit in her backyard when she heard a noise. Soon thereafter, "[a] bunch of people with guns" showed up in her backyard. Rodriguez was part of that group. Liscano said she had known Rodriguez since they were children, at one point he had lived with her, so she told him about the man who had tried to force himself into her house. Liscano said that Rodriguez told her, "he's going to take care of it, but he's going to stand behind his dog," which she said meant Rodriguez was going to stand behind the man who tried to force himself into her house. Liscano testified that Rodriguez asked her more than once where Aleksei and Alexander were, but stated she told Rodriguez that she did not know.

Liscano testified that Hernandez soon arrived at her home. Liscano said Hernandez was angry, but she did not know why. Shortly thereafter, Aleksei, Alexander, and their friend walked into Liscano's backyard, and Hernandez began yelling at Aleksei.

3

Liscano testified that she heard a gun being "pulled back" or "[l]oaded," she was pushed, and then she heard gunshots. She saw Alexander fall to the ground, followed by Aleksei. Everyone else ran, and Liscano first called her cousin, received some calls and then proceeded to call 9-1-1.

Liscano testified that she had security cameras set up in the front, back, and side of her house that were activated by motion and sound. The cameras transmitted video recordings of the events leading up to and after the murders to Liscano's cell phone. Liscano testified that the video recordings were stored on her cell phone, and the investigating officers took her cell phone the night of the murders.

Rodriguez filed a motion to exclude the video recordings, and the trial court held a hearing on his motion the day before trial. The trial court overruled Rodriguez's motion.

During trial, a compilation of the video recordings was admitted without objection from Rodriguez.

## II.    The Trial Court Did Not Abuse its Discretion in Admitting the Video Recordings

In his first issue, Rodriguez complains that the "trial court abused its discretion by admitting incomplete and misleading surveillance video [recordings] of the shooting."[1]

---

[1] The objection was made in a pre-trial motion and urged in a pre-trial hearing. "Preservation of error is a systemic requirement on appeal." *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). "Ordinarily, a court of appeals should review preservation of error on its own motion . . . ." *Id.* at 532–33 (footnote omitted) (citation omitted). The general rule is that "[a] motion in limine . . . is a preliminary matter and *normally* preserves nothing for appellate review. For error to be preserved with regard to the subject of a motion in limine, an objection must be made at the time the subject is raised during trial." *Parker v. State*, 727 S.W.3d 38, 73 (Tex. Crim. App. 2025) (emphasis added) (quoting *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008)). However, a "specific, timely objection" (as opposed to a motion in limine "[seeking] to exclude broad swaths of jury argument or evidence") may preserve error. *Id.* at 74. *Parker* drew the "specific, timely objection" language from *Geuder v. State*. *Id.* (citing *Geuder v. State*, 115 S.W.3d 11, 14–15 (Tex. Crim. App. 2003)). *Geuder* involved a defendant who made a mid-trial decision to testify and objected outside of the presence of the jury to the State impeaching him

Specifically, Rodriguez claims that because the compilation of video recordings was incomplete and misleading, its probative value was substantially outweighed by the prejudicial effect of its admission.

### A. Standard of Review and Applicable Law

"An appellate court reviews a trial judge's determination on admissibility of evidence for an abuse of discretion." *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021). "Considering that the trial court has the best view of the evidence, an appellate court will uphold a trial court's ruling on admissibility so long as it is within the 'zone of reasonable disagreement.'" *Id.* (quoting *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)); *see Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd).

---

with prior convictions. *Id.* (citing *Geuder*, 115 S.W.3d at 14–15). Under those circumstances, error was preserved without re-urging the objection in the jury's presence. *Id.* *Parker* analyzed whether error was preserved by pre-trial motions in limine against "derogatory or dehumanizing name-calling," testimony "that this is the worst case I've ever seen," and testimony that "defendant has shown no remorse." *Id.* at 73. *Parker* compared that motion in limine to the "motion[]" in *Geuder*. *Id.* at 74. The *Parker* motion in limine did not meet the "specific, timely objection" test. *Id.* Further, concerning Rule 403 of the Texas Rules of Evidence, *Parker* announced, "A trial court cannot make [the balancing] determination *pre-trial*, speculating as to what evidence will eventually be introduced and admitted, without having the full scope of the evidence before it." *Id.*; *see* TEX. R. EVID. 403. *Parker*, though, was decided on November 6, 2025. *Id.* at 38. The trial court's ruling here was made on July 14, 2025. "An objection is considered in the context in which the complaint was made and the parties' shared understanding of the complaint *at that time*." *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011) (emphasis added). As noted above, *Ford* is in the line of cases calling for sua sponte examination of preservation issues. *See Ford*, 305 S.W.3d at 532–33. *Ford* also held that "magic words" are not necessary to preserve error. *Id.* at 533. "The objection need only provide the trial judge and opposing counsel an opportunity to address and, if necessary, correct the purported error." *Laws v. State*, 640 S.W.3d 227, 229 (Tex. Crim. App. 2022) (citing *Ford*, 305 S.W.3d at 533); *see Cunningham v. State*, 673 S.W.3d 280, 291 (Tex. App.—Texarkana 2023, no pet.). In *Ford*, though, the examination revealed that, for purposes of the trial court's evaluation, error had been preserved. *Ford*, 305 S.W.3d at 534. "Under these particular circumstances, we conclude that both the trial judge and the prosecutor understood the legal and factual basis for appellant's objection." *Id.*; *see Cunningham*, 673 S.W.3d at 291. Here, at the time of its ruling, the trial court understood the hearing to be addressing trial admissibility of the compilation of the video recordings by stating, "T[h]e purpose of this hearing is to the admissibility of this video." The State apparently had the same understanding; it does not contest preservation. Under the circumstances here and recognizing the unique moment in time involved regarding *Parker*, we find that error was preserved.

5

"An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case." *Bluntson v. State*, 728 S.W.3d 87, 108 (Tex. Crim. App. 2025), *cert. denied*, 2026 WL 795116 (U.S. Mar. 23, 2026) (No. 25-6476) (citing *Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016)).

"Rule 402 [of the Texas Rules of Evidence] states that '[a]ll relevant evidence is admissible, except as otherwise provided' and that '[e]vidence which is not relevant is inadmissible.'" *Kirk v. State*, 421 S.W.3d 772, 782 (Tex. App.—Fort Worth 2014, pet. ref'd) (second and third alterations in original) (quoting TEX. R. EVID. 402). "Relevant evidence is defined as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable.'" *Id.* (quoting TEX. R. EVID. 401).

Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. When conducting a Rule 403 balancing test, a trial court

> must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); *Price v. State*, 594 S.W.3d 674, 680 (Tex. App.—Texarkana 2019, no pet.). "Of course, these factors may well blend together in practice." *Gigliobianco*, 210 S.W.3d at 642.

### B.    Analysis

Rodriguez based his motion on the Rule of Optional Completeness and argued that the admission of the "incomplete and misleading" video recordings would result in undue prejudice. *See* TEX. R. EVID. 107. The trial court stated that it wanted to hear the State's predicate for admitting the video compilation and stated, "prove up the predicate . . . and then we'll talk about whether I have to watch it." The State called Liscano as its witness for the prove-up.

Liscano testified that her security cameras transmitted short video clips based on whether they detected motion or sound. She testified that she had reviewed the compilation of video recordings and it contained a series of short video clips in chronological order. Liscano testified that her security cameras transmit footage whenever they detect motion or sound. In addition to Liscano's testimony about the functionality of the security cameras, she testified generally about the contents of the video recordings, including the identities of the persons in the video recordings and their activities leading up to the conflict and shootings. Liscano testified that she did not edit the short video recordings, which were stored on her cell phone, or disturb the security cameras before the video recordings were confiscated by law enforcement. Liscano testified that she provided all of the video recordings to law enforcement when they arrived at her house on the evening of the murders. Liscano agreed that the compilation of video recordings was a "fair and accurate depiction of the events that happened that night."

7

During cross-examination, Rodriguez attempted to discredit Liscano, and the trial court sustained the State's protest by stating, "T[h]e purpose of this hearing is to the admissibility of this video [compilation]. . . . I'm going to limit your cross-examination to the admissibility of the authenticity of this exhibit." When Rodriguez again questioned Liscano about the murders, the trial court interjected, "How does this relate to the admissibility, the technical aspect of this video? That's what I'm trying to hear from you." Rodriguez explained that he was attempting to impeach Liscano's credibility, and the trial court stated, "I think the limitation I'm placing on you is to go into this video recording device and chronology, how it's set up. The chronology of what the exhibit shows and whether she tampered with it. Those types of things." Rodriguez then moved to strike Liscano's testimony about the facts of the confrontation preceding the murders. The trial court did not rule on Rodriguez's motion to strike, but responded, "That's all going to come -- you can take that up before the jury tomorrow. This is limited to the admissibility of [the video compilation]."

Rodriguez did not call any witnesses, and neither party admitted the compilation of video recordings into evidence at the pre-trial hearing.

At the conclusion of the evidentiary hearing, the trial court denied Rodriguez's motion, stating, "I'm going to overrule the motion to exclude the predicate laid before the jury tomorrow. Pre-trial 1 [the video compilation] can be admitted into evidence." The next day at trial, the State offered the video compilation into evidence, and Rodriguez did not object.

Rodriguez argues on appeal that the video compilation was incomplete because it "failed to record *a full minute and a half from just prior to the shooting* – the time most critical for

8

assessing Rodriguez's self-defense justification." Yet, Rodriguez did not present evidence of the allegedly missing portion of the video recording until trial.[2] Though Rodriguez's motion was largely based on the Rule of Optional Completeness, he presented no evidence at the pre-trial hearing to contradict Liscano's testimony that the State's video compilation was a fair and accurate depiction of the events that took place on the night of the murders. Rodriguez did not seek to have the video compilation admitted, and he did not compare the video compilation to the short video clips to establish that there was a missing portion. Further, after the trial court indicated it was limiting its consideration to the video compilation's authenticity at the pre-trial hearing, with other matters to be taken up before the jury, Rodriguez did not request that the trial court view the video compilation for purposes of performing a Rule 403 balancing test. And when the State introduced the video compilation at trial, Rodriguez did not object.

When the trial court ruled at the pre-trial hearing on the admissibility of the video compilation, it had before it as evidence only Liscano's testimony about the video recordings, not the video compilation itself nor the short video clips that comprised the video compilation. Liscano's testimony did not establish that the video compilation would be more prejudicial than probative. Rodriguez's argument on appeal rests on testimony about an allegedly missing portion of the video compilation that was not presented until trial, but Rodriguez did not put on any evidence of the alleged gap at the pre-trial hearing, and at trial, he did not object to the admission of the video compilation.

---

[2]Testimony regarding an alleged one-minute-twenty-six-second gap in the video compilation came in through a different witness at trial, but Rodriguez presented no evidence of the gap during the pre-trial hearing.

Our review of the trial court's denial of Rodriguez's motion to exclude video recorded evidence is limited to the evidence that was before the trial court at the time of its decision. *See Black v. State*, 362 S.W.3d 626, 635 (Tex. Crim. App. 2012); *Oringderff v. State*, 528 S.W.3d 582, 585 (Tex. App.—Texarkana 2017, no pet.). Rodriguez does not claim that the parties or the trial court addressed the issue again at trial. Under these circumstances, the trial court did not abuse its discretion in denying Rodriguez's motion. *See Black*, 362 S.W.3d at 635.

We overrule Rodriguez's first issue.

## III. The Trial Court Did Not Err in Submitting the Jury Charge

In his second and third issues, Rodriguez argues that errors in the jury charge require reversal of his conviction. By his second issue, Rodriguez claims that the trial court erred in submitting a jury charge with conflicting application paragraphs. By his third issue, he argues that the trial court erred in failing to submit a defense-of-a-third-person instruction. Rodriguez did not object to the jury charge in the trial court, and we were not directed to any portion of the record in which Rodriguez requested a defense-of-a-third-person instruction.

### A. Standard of Review and Applicable Law

We review a claim of error in a jury charge in two steps. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022). "First, we determine whether the charge is erroneous. If it is, then we must decide whether the appellant was harmed by the erroneous charge." *Id.* (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013)). "If a defendant timely objects to alleged jury-charge error, the record need only show 'some harm' to obtain relief." *Id.* (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g), *superseded on*

*other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988)).

If a defendant does not timely object, "the record must show 'egregious harm'" to obtain relief.

*Id.* (quoting *Almanza*, 686 S.W.3d at 171).

We assess harm by reviewing "the entire jury charge, the state of the evidence, including

the contested issues and weight of [the] probative evidence, the argument of counsel[,] and any

other relevant information revealed by the record of the trial as a whole." *Id.* (first alteration in

original) (quoting *Almanza*, 686 S.W.3d at 171). "An erroneous jury charge is egregiously

harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally

affects a defensive theory." *Id.* (citing *Almanza*, 686 S.W.3d at 171).

### B. Analysis

#### 1. Conflicting Application Paragraphs

The trial court submitted a jury charge containing a first application paragraph that set

forth the elements of capital murder without any mention of the law of self-defense. Following

the listing of the elements of the offense, that paragraph instructed the jury that "[i]f . . . the

[S]tate has failed to prove . . . one or more of [the] elements . . . you must find the defendant 'not

guilty'" and "[i]f . . . the [S]tate has proved each of the ten elements above, you must find the

defendant 'guilty.'" Immediately following that paragraph, under the heading "**Defenses**," the

charge set forth the law on self-defense. Then, in a subsequent section entitled "**Application of**

**Law of Self Defense to Facts**," the charge again set forth the elements of capital murder but

further instructed the jury that if it found the elements of capital murder beyond a reasonable

doubt and further found that "defendant was justified in using deadly force . . . in self-defense,"

11

the jury was to "find the defendant not guilty." Rodriguez asserts that those application paragraphs were in conflict and permitted the jury to convict him of capital murder without considering whether he acted in self-defense.

In *Hernandez v. State*, the Texas Court of Criminal Appeals concluded the trial court did not err when self-defense was not incorporated into the application paragraph of the charged offense but was included in a later instruction. *Hernandez v. State*, 375 S.W.2d 285, 288 (Tex. Crim. App. 1963); *see Ekern v. State*, 200 S.W.2d 412, 415 (Tex. Crim. App. 1947) ("The court cannot and is not required to charge all the law in each paragraph of his charge, but such charge should be taken and considered as a whole; and an ordinary jury is expected to and surely does take the charge as a whole and considers it as such."); *Savoy v. State*, No. 14-15-00637-CR, 2016 WL 6809168, at *5 (Tex. App.—Houston [14th Dist.] Nov. 17, 2016, pet. ref'd) (mem. op., not designated for publication). Accordingly, we conclude that the jury charge was not erroneous based on the submission of the self-defense instructions.

We overrule Rodriguez's second issue.

### 2. Defense-of-a-Third-Person Instruction

Rodriguez argues that the evidence supported the submission of a defense-of-a-third-person instruction and the trial court committed reversible error in failing to submit such a charge.

Rodriguez submits that Article 36.14 of the Texas Code of Criminal Procedure "requires the trial judge to submit to [the] jury 'a written charge distinctly setting forth the applicable law to the case." *See* TEX. CODE CRIM. PROC. ANN. art. 36.14. Article 36.14 does not, however,

12

"impose[] a duty on trial courts to *sua sponte* instruct the jury on unrequested defensive issues." *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998); *see Cruz v. State*, 698 S.W.3d 265, 268 (Tex. Crim. App. 2024) (identifying the right to "instruct a jury on a defensive issue" as a forfeitable category-three right under *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993)).

Rodriguez does not refer us to any instance in the record at which he requested a defense-of-a-third-person instruction, and he did not object to the submission of the charge without such an instruction. Thus, he has forfeited his right to complain of the omission of such an instruction on appeal. *See* TEX. R. APP. P. 33.1.

We overrule Rodriguez's third issue.

## IV. Rodriguez Did Not Preserve Error on the Constitutionality of Section 12.31(a)(2)[3]

In his fourth issue, Rodriguez claims that Section 12.31(a)(2) of the Texas Penal Code, which mandates an automatic life sentence upon conviction in a capital murder case in which the State does not seek the death penalty, is facially unconstitutional as violative of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 1, Section 13 of the Texas Constitution. *See* U.S. CONST. amends. V, VI, VIII, XIV; TEX. CONST. art. I, § 13. Rodriguez acknowledges that he did not lodge an objection to the mandatory sentencing scheme in the trial court, but he argues, without supporting authority, that his right to due process and to be free from cruel and unusual punishment is a fundamental, category-two *Marin* right, unforfeitable absent express action. *See Marin*, 851 S.W.2d at 278.

---

[3]*See* TEX. PENAL CODE ANN. 12.31.

Rodriguez's failure to preserve error is fatal to this challenge. As the Texas Court of Criminal Appeals has previously held:

> *Marin* took a functional approach to error preservation, dividing rules into three types: (1) absolute requirements or prohibitions, (2) rights that are waivable-only, and (3) rights that can be forfeited. A facial challenge to the constitutionality of a statute falls within the third category. Statutes are presumed to be constitutional until it is determined otherwise. The State and the trial court should not be required to anticipate that a statute may later be held to be unconstitutional.

*Karenev. v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (footnotes omitted) (citations omitted); *see Simms v. State*, No. 06-18-00181-CR, 2019 WL 2479845, at *9 n.15 (Tex. App.—Texarkana June 14, 2019, pet. ref'd) (mem. op., not designated for publication) (applying *Karenev* and determining appellant preserved his facial challenge to the constitutionality of Section 12.31 by raising the issue in a motion for new trial). Because Rodriguez did not preserve error on this category-three *Marin* right, he has forfeited the opportunity to raise it on appeal. *See* TEX. R. APP. P. 33.1.

We overrule Rodriguez's fourth issue.

## V.      Conclusion

We modify the trial court's judgment to reflect (1) that the punishment was assessed by the trial court and (2) that punishment was a mandatory life sentence without parole. As modified, we affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:      March 16, 2026
Date Decided:        June 29, 2026

Do Not Publish

14